UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Marijulia Santiago,

                          Plaintiff,

        v.

Commissioner of Social Security,

                          Defendant.

**Decision and Order**

17-CV-945 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 6,[1] pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 11, 15.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits under Title II of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by

---

[1] There appear to be two copies of the Certified Administrative Record filed in the docket. (Dkt. Nos. 6, 8.) As far as the Court can tell, the two copies are identical. The Court will cite pages to the first copy filed.

substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

2

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

3

Here, plaintiff makes several related arguments concerning the development of the record. Plaintiff, who was *pro se* through the time of the ALJ's decision, argues that the ALJ did not do enough to obtain all available records:

> In this matter it is clear the ALJ did not adequately fulfill his duty to develop the record. While the ALJ attempts to support there was little evidence because all records were requested and because Plaintiff did not inform him of any additional evidence, it was obvious and clear from the information and available records there were glaring apparent gaps. As such, the ALJ's harmful error directly led to the ALJ improperly denying Plaintiff on the basis there was little evidence to support her claim when this is clearly not the case. The lack of evidence was due to the inability for the ALJ to obtain it, not due to its nonexistence.
>
> First, beyond the initial attempt July 8, 2013 to obtain Plaintiff's primary care records from North Buffalo Medical Park, there were no additional attempts to obtain records. (Tr. 96). The record does not demonstrate any clear or convincing support that Plaintiff did review her records or file, nor did the judge verify this. As such, the judge erred by failing to obtain updatesfrom Plaintiff's primary physician. While he attempted to request Lake Shore Behavioral (Tr. 284), there was no direct and clear questioning if there was any treatment for dates beyond what was initially in the file. As such, the ALJ grossly failed in his duty to fully develop the record.
>
> * * * *
>
> Secondly, evidence submitted with Plaintiff's appeal is relevant and material to the period at issue. (Tr. 2, 19). A medical letter from Linwood Community Services was submitted as part of Plaintiff's appeal. This August 10, 2016 letter indicated Plaintiff was participating in treatment at Lake Shore Behavioral Health Linwood Community Services since July 2012. (tr 19). Plaintiff was scheduled for "monthly individual counseling and bimonthly medication management services" and carried diagnoses of Schizoaffective Disorder, Depressive Type, Panic Disorder and Agoraphobia. (Tr. 19). Plaintiff's mental health counselor (LMSW) Thea Fouskaris and Rachel Burns, psychiatric nurse practitioner (PNP), indicated Plaintiff presented with consistent tearfulness in sessions, and reported depressed mood, fatigue, lack of pleasure in activities, lack of motivation, excessive worry, rumination, poor sleep and poor appetite. (Tr. 19). A similar letter was submitted by Plaintiff's counselor Samantha Rakich on October 20, 2015 indicating Plaintiff's engagement in treatment.

(Dkt. No. 11-1 at 13, 14; *see also* Dkt. No. 18 at 2.) Plaintiff also criticizes the ALJ for how he assessed her credibility. "The ALJ makes assumptions which cannot be substantiated by the evidence. The ALJ made no consideration for various noted factors which impaired Plaintiff's ability to access treatment. Notably, Plaintiff has been diagnosed with agoraphobia and testified and

4

sought treatment for a high degree of difficulty to leave her home, shop and even drive. The ALJ fails to account for the very real and very limiting impact this condition has on Plaintiff and her reports of severe fears when leaving her home. (Tr. 298, 74, 76, 79, 84)." (Dkt. No. 11-1 at 19.) The Commissioner responds that any records supposedly not obtained never existed in the first place:

> Finally, Plaintiff argues that the ALJ did not make reasonable attempts to obtain medical evidence. *See* Pl.'s Br. at 11–17. More specifically, Plaintiff argues that there were "glaring apparent gaps" in the record because the ALJ did not develop the record. *See, e.g.*, Pl.'s Br. at 13. The agency, however, contacted every provider identified by Plaintiff (Tr. 41–51, 65–66, 187–89, 200–10, 222, 224). *See Vella v. Comm'r of Soc. Sec.*, 394 Fed. App'x 755, 758 (2d Cir. Sept. 29, 2011) (finding record properly developed where the ALJ obtained available medical records from sources identified by the plaintiff).
>
> Contrary to Plaintiff's argument, the "apparent gap" in the record, however, appears to be due to nonexistence. *See* Pl.'s Br. at 13. Indeed, Plaintiff obtained counsel after the ALJ's decision and while her counsel submitted additional medical records (that post-dated the date last insured), counsel apparently was not able to obtain the alleged missing treatment records from the relevant period (Tr. 16, 17-23, 57-58). Moreover, at her administrative hearing (see below for testimony), Plaintiff specifically advised the ALJ that he had obtained all of her medical records (Tr. 65-66).

(Dkt. No. 15-1 at 19.) According to the Commissioner, the ALJ took appropriate steps to protect plaintiff as a *pro se* claimant and to ensure that plaintiff did not want to keep the record open. The Commissioner also defends how the ALJ assessed plaintiff's credibility:

> Furthermore, the ALJ provided many reasons for finding that Plaintiff's allegations were not entirely credible, which she largely fails to challenge or address. *See* Pl.'s Br. at 19. For example, she inconsistently reported her activities of daily living (Tr. 42-43, 45-46, 50). *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR 96-7p. As the ALJ noted, Plaintiff told Dr. Miller that she cooked three times per week (Tr. 43, 249). On other occasions, she admitted cooking (Tr. 43, 45, 245). However, in her disability report she said that she could not use the stove alone; and at the hearing, she alleged that she burned herself when she cooked due to forgetfulness (Tr. 42-43, 78, 194). The ALJ properly noted these inconsistent statements, Plaintiff did not report such allegations to her medical providers and they consistently noted intact memory, and the record showed no treatment for burns (Tr. 43, 44, 47, 48, 262, 272-75, 298).

(*Id.* at 25.)

The Commissioner has the better argument here. The ALJ has a heightened obligation to complete the record in a nonadversarial proceeding when the claimant does not have counsel. *See Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980) ("Although a claimant for SSI disability benefits is entitled to be represented by counsel if he so desires, the Secretary is under no obligation to furnish such counsel. If, however, the claimant does appear pro se, the ALJ has a duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.") (internal quotation and editorial marks and citations omitted). When plaintiff reported two treating sources in her initial application for benefits, the ALJ obtained records from both sources. (*Compare* [191–92] *with* [233–42] *and* [260–302].) The ALJ advised plaintiff of her right to obtain counsel, and plaintiff chose to proceed *pro se*:

> ALJ: All right. Let me explain to you what your rights are to representation, and you tell me what you'd like to do. First of all, it's not necessary to have a representative. But if you did want one, then I would grant you one adjournment to get a representative. At the next time a hearing is scheduled, if you didn't have the representative with you, I would go forward without your having a representative. Now, the rep—if you decided that you want to have a representative, that person does not have to be a lawyer. He or she could be a non-attorney as long as they're familiar with Social Security rules, regulations, and proceedings. If you decided that you wanted a representative, that person would go over the file with you. And if there was any missing medical evidence or ·any other evidence that you think is important to your claim, he would have you sign a release of information and try to obtain those records. Let' s see. This isn't like an adversary hearing where you have a plaintiff and defendant. The issue is whether or not you're disabled. If you—if I entered a favorable decision in your case, then he or she could be entitled to be a percentage of any past-due benefits that you're entitled to. If I decided that you were not disabled, then you would not have to pay that representative any money. Now, if you decided that you wanted a representative, we do have a list of various agencies and clinics and individual that possibly could represent you after going on the file with you after they examine the medical evidence and your economic background, but you're not bound by that list. If you decided that you wanted a representative, you can go out and pick a representative of your choosing. Do you understand your rights as I have explained them to you? Pardon me?
>
> CLMT: Yes, sir.

6

> ALJ: And what would you like to do?
>
> CLMT: No representative.

[65–66.] *See Lamay v. Comm'r*, 562 F.3d 503, 509 (2d Cir. 2009) ("The record indicates that the ALJ stated, and Lamay heard, that she could 'either . . . have a postponement of the hearing and get a lawyer or . . . [go] forward with the hearing today. It's your choice.' Lamay indicated twice that she preferred to proceed, alone, immediately. Although this notice was punctuated by technical difficulties, we cannot say that Lamay was unaware of her right to counsel, or that she waived that right involuntarily or without knowledge."); *Moss v. Apfel*, No. 96 CIV. 9362 (DC), 1998 WL 264828, at *4 (S.D.N.Y. May 21, 1998) ("While the record does show that plaintiff had some questions on the issue of waiver, she was well advised of her right long before her hearing and chose not to have a representative attend the hearing on the date it was scheduled. At the hearing, she waived her right to counsel."). An interpreter appeared at the hearing to help plaintiff. [64.] The ALJ asked plaintiff whether she wanted to keep the record open and whether there were any other records that needed to be obtained. [69.] Plaintiff confirmed that the ALJ had all of the records:

> ALJ: I have records from North Park Medical that was dated February 28, 2013. Then you went to see Dr. Epalito [phonetic], a Social Security doctor, September of 2013, and you also were examined on the same day by a Dr. Miller. That was dated 9/5/2013. I have records from Lakeshore Behavioral Clinic, November of 2012 through March of 2014. Then, Rachel Burns, a physician's—a nurse practitioner, from Lakeshore Behavioral that was dated January 20 of 2015. And another record from Lakeshore Behavioral that was dated February 18 of 2015. Are there any other records that you want me to try to obtain before I go forward with the hearing? Any other records, or do I have them all?
>
> CLMT: I think you have them all.
>
> ALJ: I have them all? Okay. Then we'll go forward with the hearing.

[69.] The ALJ further supplemented the record with consultative examiners. [243–59.] *See also* 20 C.F.R. § 404.1519a. The resulting record showed consistently that plaintiff had some severe

7

impairments, such as major depression exacerbated by anemia and hypothyroidism [266], but that no treatment provider suggested limitations to the "broad world of work." [*See, e.g.*, 249 (medical source statement noting "no evidence of limitation" inability to learn simple and complex tasks); 254 (medical source statement suggesting only limitations related to asthma); 268 (plaintiff "made significant progress toward goals" of behavioral treatment plan as of September 9, 2013); 279 (plaintiff "continues to make significant progress" as of March 3, 2014). The subsequent information that plaintiff submitted to the Appeals Council—information from 2015 and 2016—postdated the last date insured of December 31, 2014 and would not have outweighed the bulk of the record in any event. *See, e.g., Papp v. Comm'r*, No. 05 CIV.5695(AJP), 2006 WL 1000397, at *17 (S.D.N.Y. Apr. 18, 2006) (affirming rejection of records pertaining to a claimant's condition after the last date insured) (citations omitted).

### III. CONCLUSION

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 15) and denies plaintiff's cross-motion (Dkt. No. 11).

The Clerk of the Court is directed to close the case.

SO ORDERED.

__/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: June 13, 2019